UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SALOME MCCRISTAL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 7044 |
| | ) | |
| v. | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER[1]

In this social security appeal, the plaintiff, Salome McCristal, pursuant to 42 U.S.C. § 405(g)
and 42 U.S.C. § 1383(c), seeks summary reversal and/or remand of a final decision by the
Commissioner of the Social Security Administration ("Commissioner") denying her application for
social security benefits. The Commissioner filed a cross-motion seeking affirmance of the decision
denying benefits. For the following reasons, Ms. McCristal's motion for summary judgment is
granted (doc. # 25), and the Commissioner's motion for summary judgment (doc. # 33) is denied.

I.

We begin with a summary of the lengthy procedural history of this case. On January 4, 2006,
Ms. McCristal applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits
("DIB"), alleging she became unable to work due to asthma and high blood pressure at the onset date
of June 5, 2004 (R. 23, 66, 71). Her application was denied initially on June 2, 2006 (R. 27), and
upon reconsideration on September 28, 2006 (R. 35, 39). On October 4, 2006, Ms. McCristal filed

---

[1] On April 14, 2010, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the case
was assigned to this Court for all proceedings, including entry of final judgment (doc. # 20).

a timely request for a hearing before an Administrative Law Judge ("ALJ") (R. 44), which was granted (R. 45).

The hearing was held on June 6, 2007, before ALJ Michael Maguire (R. 254). At the hearing, Ms. McCristal's attorney amended the alleged onset date to January 1, 2006, and both Ms. McCristal and Vocational Expert ("VE") Michelle Peters testified. On June 26, 2007, the ALJ issued a written decision denying benefits and finding that Ms. McCristal was not disabled under the Social Security Act ("the Act") (R. 21). On July 2, 2007, Ms. McCristal filed a request for review (R. 12), and the Appeals Council denied this request on September 27, 2007 (R. 4). On November 20, 2007, she filed a complaint in the Northern District of Illinois, case number 07 C 6574, and on June 23, 2008, by Joint Stipulation and Remand Order, Magistrate Judge Morton Denlow reversed the ALJ's decision to deny benefits and remanded the case to the Commissioner (R. 364).

On July 14, 2008, pursuant to the remand order, the Appeals Council vacated the Commissioner's decision and remanded the case to the ALJ for a new hearing (R. 365). In that order, the Appeals Council consolidated Ms. McCristal's original claims with additional ones she had filed on November 27, 2007 (R. 366). Following remand, ALJ McGuire held a new hearing on October 15, 2008, at which time Ms. McCristal amended her onset date to October 31, 2006 (R. 483). Ms. McCristal and a new VE, Julie Bose, testified. On December 29, 2008, the ALJ issued a new decision denying Ms. McCristal benefits (R. 353-58).

Plaintiff filed exceptions with the Appeals Council, and on September 25, 2009, the Appeals Council issued a decision finding no reason to assume jurisdiction of the ALJ's second decision (R. 282-83). Therefore the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 416.1484 and 404.984; see also Schmidt v. Astrue, 496 F.3d 833, 841 (7th Cir. 2007).

## II.

We now summarize the administrative record. We set forth the general background and Ms. McCristal's subjective medical complaints in Part A, followed by the medical record in Part B. In Part C, we discuss the testimony at the second hearing, and in Part D, we address the ALJ's subsequent written opinion.

### A.

Ms. McCristal was born on June 27, 1954 (R. 66). She is 5'4" tall and weighs 111 pounds (R. 105). She is a college graduate (class of 1975), has an adult son and daughter, and has never been married (R. 66, 110, 120). She lives alone in an apartment (R. 72).

Ms. McCristal worked as a foot patrol security guard for almost eighteen years, from January 1983 to December 2005 (R. 106, 491). The job required her to walk and stand about three hours each day (R. 107). She never lifted more than ten pounds and frequently lifted less than that (R. 107). She began her last security guard job on April 12, 2005. After she requested a change in her security guard duties to a job that involved sitting, she was terminated on December 30, 2005 (R. 106). She filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission on March 8, 2006, claiming that she was discharged from her job because of her physical handicaps -- asthma and high blood pressure -- which did not prevent her from performing the essential functions of her job (R. 159-60, 2530).

On October 31, 2006, Ms. McCristal was assaulted. An individual punched her, and she fell to the street, fracturing her right hip and injuring her right leg (R. 222, 486-87). As a result of this injury, Ms. McCristal limps when she walks, and her right leg and right hip continue to cause her pain when she does not take her pain medication (R. 294-95). In addition to not being able to work,

Ms. McCristal contends that her asthma, high blood pressure, and bad legs prevent her from doing yard work, household repairs, washing her car, and exercising (R. 106, 147).

## B.

As Ms. McCristal amended her onset date to October 31, 2006 (R. 483), we focus on the medical evidence from that date. On October 31, 2006, when she was walking down the street, someone struck Ms. McCristal, causing her to fall to the ground (R. 252).[2] Ms. McCristal rode in an ambulance to the emergency room, where X-rays showed a right hip fracture (*Id.*). On November 30, 2006, Ms. McCristal went to the Chicago Musculoskeletal Institute, complaining of pain in her right hip. Dr. Daniel Ivankovich observed that Ms. McCristal walked with a noticeable limp, and showed tenderness upon palpitation and flexion of her hip (*Id.*). There was no swelling in her lower extremities (*Id.*). Ms. McCristal did not have surgery for the fracture (*Id.*). Dr. Ivankovich prescribed Ms. McCristal MS-Contin and Tylenol 3 for her pain (R. 253).

On December 9, 2006, Ms. McCristal went to the emergency room ambulating with crutches, and complaining that she had extreme pain in her right hip and leg since she had run out of pain medication (R. 227-28). The X-ray from the emergency room showed no evidence of fracture or dislocation of the right hip (R. 233), but a CT scan of Ms. McCristal's pelvis taken later that month showed a fracture in her right hip (R. 251). She was diagnosed with chronic hip pain and a right hip fracture, prescribed morphine, and ordered to be non-weight bearing on that leg for six weeks (R. 227-28).

---

[2] The record does not contain a police report or emergency room report from this night. As the events of October 31, 2006, are not disputed here, we do as the ALJ did (R. 356), and use the events as set forth by Dr. Ivankovich in his report dated November 30, 2006 (R. 252).

4

Ms. McCristal made several visits to St. Elizabeth's Hospital in December 2006 for follow-ups on her right hip fracture and leg pain. On December 14, 2006, Ms. McCristal visited the hospital for pain in her right leg and hip (R. 226). She indicated that she was on pain medications and was not in serious pain (*Id.*). On December 21, 2006, the hospital notes indicated that Ms. McCristal continued to improve and increase her activity with crutches, with very good range of motion (R. 225). Her pain improved to a 5 out of 10, and the doctor prescribed physical therapy (*Id.*). Ms. McCristal was also examined by Dr. Ivankovich on December 21, 2006 (R. 251).

In January 2007 Ms. McCristal began physical therapy at St. Elizabeth's Hospital. The physical therapy was prescribed to treat the pain, weakness, and decreased gait and strength in her right leg (R. 222). The notes from the initial physical therapy evaluation on January 3, 2007, stated that Ms. McCristal ambulated with one crutch and had tenderness and moderate pain (6 out of 10) in her right hip and thigh (R. 222-23). The pain was aggravated by bending, standing, sleeping, or walking (R. 223). Notes from physical therapy sessions on January 10 and 12, 2007, stated that Ms. McCristal had continued soreness on her right thigh (R. 221). On January 18, 2007, the physical therapy notes stated that Ms. McCristal had less pain and only slight tenderness on her right thigh (R. 220). She did standing exercises and was able to walk without gait deficits and without limping (*Id.*). She continued to ambulate with one crutch (*Id.*). On January 30, 2007, Ms. McCristal was discharged from physical therapy after five treatments, with instructions for home exercises and pain management (R. 219).

Ms. McCristal continued to make follow-up visits to St. Elizabeth's Hospital for her right leg pain. On February 22, 2007, the medical report stated that Ms. McCristal's pain was stable and her ambulation was improving, though she continued to use a cane (R. 303). On April 12, 2007, Ms.

McCristal was still walking with a cane and reported persistent pain in her right hip, although on that day she had no pain (R. 302).

On April 17, 2007, Ms. McCristal filed an application for a reduced fare permit (R. 253K). On the third page of the application, dated May 24, 2007, Dr. Ivankovich checked boxes indicating that Ms. McCristal should be eligible for a reduced fare permit because of a dysfunctional impairment causing: significant difficulty walking more than one block; significant difficulty getting on or off a standard bus or train; significant difficulty standing in a moving vehicle; and significant difficulty using stairs or escalators (R. 253M). Dr. Ivankovich opined that the duration of the impairment would be four years -- the longest stretch of time indicated on the application (*Id.*). He further noted that Ms. McCristal was being treated for a hip fracture and had developed osteoarthritic changes that required ongoing management (R. 253N).

On June 14, 2007, notes from a follow-up visit to the hospital indicated that Ms. McCristal had been referred to a family practice and would resume physical therapy (R. 300). She rated her pain as minimal, and she was not using a cane (*Id.*). On a follow-up medical visit on July 26, 2007, Ms. McCristal indicated that she had continuing hip pain, but she had no pain during the visit (R. 299). The medical report indicated that degenerative changes were developing, and her edema had subsided (*Id.*). Notes from an October 4, 2007 visit to the hospital stated that Ms. McCristal's pain and function continued to improve, and she walked without a cane and continued to take pain medication (R. 298).

The next medical records are from May 2008. On May 12, 2008, examination and X-ray results demonstrated mild to moderate degenerative arthritis of the right hip joint, with some narrowing of the joint cartilage (R. 459). There was no evidence of acute fracture or other bone deterioration of the right hip, and the X-ray of the left hip was negative (*Id.*).

On June 6, 2008, Ms. McCristal went to the doctor to have a cyst drained on her back (R. 339). On June 12, 2008, she went for a follow-up visit to the hospital to request a refill on her pain medications for her leg and hip pain (R. 296). The medical notes stated that she still required Trazedol and an assisting device due to her hip, and recommended a follow-up medical visit in four to six months (*Id.*). Medical notes from July 8, 2008, indicate the cyst was healing well and causing Ms. McCristal no pain (R. 337). In October 2008, Ms. McCristal was still taking narcotic pain medication to alleviate her right hip pain (R. 295). In January 2009, the latest medical documents in the record, Ms. McCristal again visited the hospital for persistent right hip pain (R. 294). The medical report indicated that she had difficulty ambulating due to the pain, and she had an abnormal gait (*Id.*).

## C.

Ms. McCristal and VE Bose testified at the administrative hearing on October 15, 2008. Ms. McCristal testified that she lives on the third floor of an apartment building with no elevator (R. 495). She goes up and down the stairs once or twice daily, and occasionally walks to the store a half block away (R. 495-96). She can carry a gallon of milk (R. 497). Ms. McCristal uses a cane only

for long distances, and she limps without it (R. 498). She can stand comfortably for about 15 to 20 minutes, 30 minutes at most (*Id.*). She washes the dishes, prepares meals, shops, and does light cleaning, which she described as cleaning the bath tub and sink, and making and changing the bed (R. 499). Her son takes out the trash and does the laundry (*Id.*). Ms. McCristal does not vacuum because the dust aggravates her asthma, as do smells and weather changes (R. 498-99).

Ms. McCristal described the pain in her hip as a 9 out of 10 (R. 502). However, the medication she takes puts her pain at a zero and helps her sleep (*Id.*). The medication makes her sleepy and dizzy, so that she has to lay down or take 30 to 45 minute naps (R. 503). She testified that she cannot work while taking the pain medication because she "... can't follow orders too well. I don't listen too well. And I just don't concentrate too well" (R. 504-05). In fact, she tried to do security guard work, but left after four days because she could not stand all day (R. 505), and she can only sit about 15 minutes before she gets tired of sitting and has to move around (R. 507). She gets pins and needles in her legs when standing, sitting, or walking (R. 508). Ms. McCristal also has side effects from her blood pressure medication; it makes her drowsy and jittery and produces a lot of saliva, and she has to go to the bathroom every 30 to 45 minutes (R. 508-09). She sees a doctor every three to four months (R. 509). Since she was assaulted on October 31, 2006, Ms. McCristal does not like being alone or on the street, she does not like crowds or standing at bus stops by herself, and she stays away from other people on the street (R. 510). She also has to force herself to eat (R. 511).

Ms. McCristal began working at her last unarmed security guard job on April 12, 2005, and she testified that she was let go on December 30, 2005, because of her asthma and high blood pressure, which led to her fainting on the job (R. 501-02). The VE described Ms. McCristal's past

work as light and semi-skilled (R. 492). Although the DOT classifies security guard positions as light work, the VE testified that "in the real world of work and based on my job placement experience there are alarm monitoring security guard positions that are classified as sedentary" and semi-skilled, such as Security Guard Patrol and Security Guard Gate positions (R. 492, 494).[3] Approximately 400 to 450 of these positions exist in the metropolitan area (R. 492).

The ALJ asked the VE to assume an individual of claimant's age, education, and vocational background who could on occasion lift and carry 20 pounds, frequently lift 10, could stand, walk or sit for 6 hours in an eight-hour day but would require a sit/stand option at will and could push or pull 20 pounds, but had to avoid concentrated exposure to pulmonary irritants and was limited to performing simple, routine tasks, with only incidental contact with other people (R. 512). The VE testified that this person could not perform the claimant's past relevant work or any other semi-skilled work available at the light exertional level (Id.).[4] The VE testified that the hypothetical person could perform unskilled work consistent with the DOT, including lathe operator, punch press operator, and laundry folder, of which between 2200 and 2900 total jobs exist (R. 513, 521).

However, all jobs would be ruled out if the person needed to lay down throughout the day due to pain or side effects from medication, or if the person had difficulty concentrating up to 20 minutes an hour (R. 513-14). In addition, the VE stated that these positions would be ruled out if the person had to avoid concentrated exposure to pulmonary irritants (R. 515). The VE then testified

---

[3]The VE at the first hearing testified that the DOT and Department of Labor describe a gate security guard position as semi-skilled and sedentary, and that Ms. McCristal's job skills would be transferable to a sedentary security guard position, of which about 550 such positions are performed currently (R. 277). The VE at the first hearing testified that Ms. McCristal could not perform that job if she had to avoid or have limited contact with others, and she could not perform any job if she had to take an unscheduled break for about an hour each day (R. 279).

[4]The VE at the first hearing, however, testified that Ms. McCristal could perform her past work as a security guard even if she needed to avoid concentrated exposure to pulmonary irritants (R. 277).

that if the person was limited to even moderate exposure to dust, fumes, and pulmonary irritants, all manufacturing positions and all work would be ruled out (R. 516). In determining the number of jobs available, the VE relied on her experience as a vocational rehabilitation counselor who has done labor market surveys on people who do unskilled work, must be able sit/stand at will, and avoid concentrated exposure to pulmonary irritants (R. 518).

### D.

Between the second hearing and the ALJ's second opinion, Ms. McCristal submitted additional evidence for the ALJ to consider. The evidence included an October 22, 2008, report from a follow-up doctor's appointment mentioning that she had persistent intermittent pain (R. 295). In addition, she submitted intake assessments from two different programs that she had called seeking counseling (see R. 315-18), and one in-person intake interview (R. 322-23). The intake sheets reported the various mental ailments Ms. McCristal described (Id.).

In his December 29, 2008, opinion, the ALJ found that Ms. McCristal was not under a disability within the meaning of the Act from October 31, 2006, through the date of the decision (R. 354).

The ALJ determined that Ms. McCristal has not engaged in substantial gainful activity since October 31, 2006, her last insured date was March 31, 2010 (R. 354). The ALJ found that she has the following severe impairments: asthma and status post fracture of the right hip and leg (R. 356). The ALJ incorporated by reference the evidence in his previous decision (Id.). As to the fracture, the ALJ noted that an X-ray taken after Ms. McCristal was assaulted on October 31, 2006, showed a fracture of the right hip (Id.). She had six sessions of physical therapy that ended on January 18, 2007 (Id.). Furthermore, a May 12, 2008, X-ray showed moderate degenerative arthritis of her right

hip with joint space narrowing and sclerotic changes at the articulating surfaces (*Id.*). As to her asthma, the ALJ stated that Ms. McCristal used inhalers, and as of November 3, 2006, she was smoking 1.5 packs of cigarettes per week (*Id.*). The ALJ did not find that Ms. McCristal had a severe mood disorder (*Id.*). She received counseling from October 24, 2007, to May 28, 2008, at which point she felt she could "move on" (*Id.*). Ms. McCristal did not seek additional counseling at that time (*Id.*).

The ALJ next found that Ms. McCristal did not have an impairment or combination of impairments that meets or medically equals a listed impairment (R. 356). He considered Listing 1.02 (inability to ambulate effectively), and found that it was not met because Ms. McCristal does not need an ambulatory device (*Id.*). The ALJ also considered Listing 3.03 (asthma), and found that this Listing was not met because Ms. McCristal's asthma was controlled with inhalers (*Id.*).

The ALJ then determined that Ms. McCristal has the residual functional capacity ("RFC") to perform the full range of light work: to lift/carry 20 pounds occasionally and 10 pounds frequently and to sit/stand/walk 6 hours each without limitation, while avoiding pulmonary irritants (R. 356). The ALJ found that Ms. McCristal's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the RFC (R. 357). Ms. McCristal did not need surgery for her right hip and leg fracture, and she no longer required a cane, except for long distances (*Id.*). In addition, although a treating doctor opined on May 24, 2007, that Ms. McCristal would have significant trouble walking more than a block, getting on or off a train or bus, and using stairs for the next four years, the ALJ determined that Ms. McCristal's testimony and her ADLs were not consistent with that opinion (*Id.*).

11

She lives in a third floor apartment in a building with no elevator, can grocery shop with assistance, cooks, does dishes, is able to make and change her bed, and is able to clean the tub and bathroom (*Id.*). Furthermore, although Ms. McCristal's medications cause drowsiness and lead her to nap daily, the ALJ stated that she does not experience this side effect when she is "out and about or otherwise active" (*Id.*). In addition, although she rates her pain a nine out of ten, with medication Ms. McCristal rates her pain as zero (*Id.*). She has also had no recent exacerbation of her asthma, which she believes is triggered by dust, weather changes, and smells (*Id.*).

The ALJ determined that she is capable of performing her past relevant work as a security guard as actually and generally performed (R. 358). The VE characterized this as semi-skilled, light work (*Id.*). Because he found that Ms. McCristal can return to her past work, the ALJ did not address the other jobs cited by the VE (*Id.*). Therefore, the ALJ found that Ms. McCristal has not been under a disability as defined by the Act from October 31, 2006, through the date of the decision (*Id.*).

**E.**

Ms. McCristal appealed the ALJ's second decision, and on May 8, 2009, the Appeals Council granted Ms. McCristal's request for more time to file written exceptions explaining the reasons she disagreed with the ALJ's decision of December 29, 2008 (R. 347). The record includes additional medical documents, which Ms. McCristal argued constituted new and material evidence showing that she is disabled. A January 19, 2009 medical note indicates that Ms. McCristal went to the hospital reporting persistent right hip pain and difficulty ambulating (R. 294). In addition, notes from Ms. McCristal's therapist state that Ms. McCristal spent a few days in the hospital at the end of February 2009 with injuries to her head, chest, and hip after she was attacked by her son (R. 335).

The rest of the additional evidence consists of mental assessments by Ms. McCristal's therapist (R. 308-12, 332).

The Appeals Council denied Ms. McCristal's request for review in a letter dated September 25, 2009 (R. 282). In the letter, the Appeals Council wrote that the ALJ had considered all of Ms. McCristal's limitations individually and in combination and properly found that Ms. McCristal could return to her past relevant work as a security guard (R. 282-83). Although her impairment worsened when she was assaulted by her son in February 2009, the Appeals Council stated that the new evidence from St. Elizabeth's Hospital showed that Ms. McCristal's hip improved within 12 months of the fracture, as medical notes from October 2007 indicated that Ms. McCristal had good range of motion, good function, and ambulated without an assistive device (*Id.*).

### III.

We begin our review of the Commissioner's determination with the governing legal standards. To establish a disability under the Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must also show that his impairments prevent him from doing his previous work and from performing any other "kind of substantial gainful work" that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The claimant must establish that his severe impairment was disabling as of the date last insured. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005).

The social security regulations outline a five-step evaluation process for determining whether a claimant has a disability. 20 C.F.R. § 404.1520(a)(4). These steps, which must be evaluated sequentially, require the ALJ to determine: (1) whether the claimant is currently performing any "substantial gainful activity;" (2) whether the claimant's alleged impairment or combination of impairments is severe; (3) whether the claimant's impairment(s) meet(s) or equal(s) any impairment listed in the appendix to the regulations as severe enough to preclude substantial gainful activity; (4) whether the claimant is unable to perform his or her past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.*

A finding of disability requires an affirmative answer at either Step 3 or Step 5. 20 C.F.R. § 404.1520(a)(4). A negative finding at any step other than Step 3 precludes a finding of disability. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). The claimant has the burden of proof at every step except Step 5, where it shifts to the Commissioner. *Fischer v. Barnhart*, 309 F. Supp. 2d 1055, 1059 (N.D. Ill. 2004). If the claimant has a severe impairment that does not satisfy a listing at Step 3, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(e). The RFC is used in Step 4 to determine whether the claimant can perform his past relevant work and in Step 5 to determine if the claimant can adjust to other work. 20 C.F.R. §§ 1520(f)-(g). If a claimant's RFC allows him to perform jobs that exist in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

In reviewing the ALJ's decision, the Court may not decide facts anew, reweigh evidence, or substitute its own judgment for that of the ALJ. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Where supported by substantial evidence, the Court must accept the ALJ's findings of fact. 42 U.S.C. § 405(g); *Craft*, 539 F.3d at 673. This means that the ALJ's findings must be

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If conflicting evidence would allow reasonable minds to differ, the responsibility to determine disability belongs to the Commissioner -- and the ALJ, by extension -- not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Clifford v. Apfel*, 227 F.3d 863, (7th Cir. 2000) (holding that the ALJ, not the courts, resolves evidentiary conflicts).

That said, an ALJ is not entitled to unlimited judicial deference. An ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must consider all relevant evidence and articulate the reasons he rejected certain evidence. *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009).

## IV.

Ms. McCristal contends that the ALJ's determination that she is not disabled should be reversed because the ALJ erroneously: concluded that she could perform her past relevant work, determined her RFC, analyzed her credibility, and evaluated the opinion of her treating physician (doc. # 26; Pl.'s Mem. in Supp. of Summ. J.). We first address Ms. McCristal's claim that the ALJ improperly determined her RFC, because this affects our analysis of the ALJ's other alleged errors. As explained above, the ALJ determined that Ms. McCristal has the RFC to perform the full range of light work (to lift/carry 20 pounds occasionally and 10 pounds frequently and to sit, stand, or walk 6 hours each without limitation), but must avoid pulmonary irritants (R. 356). Ms. McCristal argues that the RFC determination was not supported by any medical opinion, and thus that the ALJ improperly reached an independent medical conclusion (Pl.'s Mem. at 8-9).

To determine whether the ALJ's decision is supported by substantial evidence, we consider both the evidence that supports and the evidence that may contradict the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe*, 425 F.3d at 351 (quoting *Lopez*, 336 F.3d at 539). An "evidentiary deficit" behind an ALJ's chosen RFC is reversible error. *Suide v. Astrue*, No. 09-2696, 2010 WL 1508510, at *6 (7th Cir. Apr. 16, 2010). When an ALJ denies benefits, the ALJ must build an "accurate and logical bridge from the evidence to [his or] her conclusion," *Dixon*, 270 F.3d at 1176, and the ALJ may not "play doctor" by using his own lay opinions to fill evidentiary gaps in the record, *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). In addition, not only must the ALJ "confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004), the ALJ also has an obligation to develop a claimant's medical record, and thus may be required to consult medical advisors where that record appears to be incomplete. 20 C.F.R. § 416.912(d). If the evidence on which the ALJ relied does not support his conclusion, the decision cannot be upheld. *Blakes*, 331 F.3d at 569.

Here, Ms. McCristal testified that she uses a cane for long distances but limps without it (R. 489), she can stand comfortably for 15 to 30 minutes at most (*Id.*), and she can only sit for about 15 minutes before she has to move around to avoid pins and needles in her leg (R. 507). In addition, various medical reports in the record indicate that Ms. McCristal had reported pain in her right hip and leg and degenerative arthritis was found in her right hip (*see, e.g.*, R. 229-30, 295-98). The ALJ discounted Ms. McCristal's accounts of her right hip and leg pain because he found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment (R. 357).

But, the ALJ's RFC assessment is inconsistent with the opinion of Ms. McCristal's treating physician, Dr. Ivankovich, which he provided on a May 24, 2007 in an application for a reduced fare permit for Ms. McCristal. Dr. Ivankovich opined that Ms. McCristal would have significant difficulty walking more than one block, and he expected that her disability would last for four years -- the maximum amount of time indicated on the form (R. 253M). The ALJ completely discounted the opinion of Dr. Ivankovich -- Ms. McCristal's treating physician and the only medical expert to opine on how Ms. McCristal's disability affects her physical functionality after the October 31, 2006 assault. An ALJ must give a treating physician's opinion controlling weight if the opinion is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). If the ALJ rejects the treating physician's opinion, he must give "good reason," *Id.*, and must determine what weight the treating physician's opinion is due after considering "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

Here, the ALJ stated that Ms. McCristal's testimony and ADLs -- including evidence that she lives in a third floor apartment with no elevator, does not use a cane for short distances, and cleans the bathroom -- were not consistent with Dr. Ivankovich's May 24, 2007 opinion (R. 357). However, we are concerned that the ALJ placed undo weight on Ms. McCristal's ability to complete activities of daily living in comparison with the opinion of her treating physician. A claimant's

"ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). Moreover, ALJ did not state how much, if any weight, he gave to Dr. Ivankovich's opinion, and he failed to consider "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Larson*, 615 F.3d at 751.

In addition, the RFC adopted by the ALJ is one that he constructed without citing to evidence in the record to support it. There is no physical RFC assessment in the record from the relevant time period (after October 31, 2006). The ALJ had no discernable basis on which to quantify Ms. McCristal's RFC after her October 2006 assault. An ALJ "may not use [his] own lay opinions to fill evidentiary gaps in the record." *Suide*, 2010 WL 1508510, at *6. That, however, is exactly what the ALJ did in this case.

The Commissioner's attempt to show that the ALJ's RFC determination is nevertheless supported by substantial evidence falls flat. The Commissioner argues that the RFC is supported by substantial evidence because "no physician opined that Plaintiff was *unable* to perform the exertional requirements of light work other than the statements set forth by Dr. Ivankovich . . ." (Def.'s Mem. at 4-5) (emphasis added). That argument proves too much. There also is no physician opinion in the record that says Ms. McCristal is *unable* to lift 100 pounds or run a mile. But, we are confident that the Commissioner would not (and he surely should not) say that this means the ALJ would have substantial evidence to adopt an RFC that says Ms. McCristal could do those things.

18

The question here is whether there is substantial evidence to support the specific RFC that the ALJ adopted. For example, in *Suide*, the Seventh Circuit reversed and remanded the ALJ's opinion where "the record simply d[id] not support the parameters included in the ALJ's residual functional capacity determination," such as – like in the instant case – "an ability to stand or walk for six hours in a typical work day." *Suide*, 2010 WL 1508510, at *6 ; *see also Barrett v. Barnhart*, 355 F.3d 1065, 1066-67 (7th Cir. 2004) (finding reversible error where the ALJ determined that the claimant could stand for two hours with no medical evidence to support such a conclusion). The ALJ's RFC here suffers from this same flaw.

Thus, we reverse the ALJ's RFC determination, and remand it for further consideration and factual development as may be appropriate.

## V.

Given that the ALJ's RFC cannot stand, the ALJ's Step 4 conclusion that Ms. McCristal could perform her past relevant work is untenable. Even assuming the correctness of the RFC, however, the ALJ's Step 4 analysis was erroneous and must be reversed.

*First*, at Step 4 the ALJ found that Ms. McCristal could perform her past relevant work as a security guard "as actually and generally performed" (R. 358). But, the ALJ never discussed the specific job functions of Ms. McCristal's past security guard work before finding that she could perform her past relevant work as actually performed. An ALJ is required to consider whether the claimant could perform the duties of the specific job that he had held before determining whether the claimant could perform his past relevant work. *Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004). The ALJ failed to do so.

*Second*, the ALJ erred in the Step 4 determination because he found that Ms. McCristal could perform her past relevant work even though he adopted an RFC that requires her to "avoid exposure to pulmonary irritants" (R. 356). That Step 4 finding is inconsistent with the testimony of VE Bose, who stated that a hypothetical individual who must avoid *concentrated exposure* to pulmonary irritants (and was limited to simple, repetitive tasks and incidental contact with others) could not perform Ms. McCristal's past relevant work (R. 512). The ALJ failed to explain how Ms. McCristal could perform her past work with an RFC that requires her to avoid exposure -- and not just concentrated exposure -- to pulmonary irritants.

The Commissioner argues that the ALJ's wording "appears to be a typographical error," and the ALJ actually meant to say that Ms. McCristal must avoid "concentrated exposure" (Def.'s Mem. at 4). The Commissioner's contention that the ALJ and the VE simply misspoke is a non-starter. The difference between avoiding *concentrated* exposure to pulmonary irritants and avoiding *any* exposure to pulmonary irritants is meaningful. *See, e.g.*, *Sayles v. Barnhart*, No. 00 C 7200, 2001 WL 1568850, at *9 (N.D. Ill. Dec. 7, 2001) (holding that an "absolute bar" on certain activities "is obviously a more extreme limitation than a bar which would prevent concentrated . . . exposure"). We were neither present at the administrative hearing nor privy to the ALJ's thought processes in drafting his opinion. Thus, we will not assume the ALJ did not mean what he wrote in his opinion.

## CONCLUSION

For the reasons set forth above, we grant Ms. McCristal's motion for reversal and/or remand (doc. # 25), and we deny the Commissioner's motion to affirm (doc. # 33). We express no view as to the proper outcome on remand.

20

Upon remand, a third hearing will be conducted before an ALJ on Ms. McCristal's disability claims. Given that this is the second remand on Ms. McCristal's claims, we respectfully suggest to the Commissioner that the third hearing be conducted before a different ALJ, who may be better able to take a fresh look at the evidence. The case is terminated.[5]

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: July 5, 2011

---

[5]As a result of our decision to remand on the ground stated, we do not reach plaintiff's challenge to the ALJ's credibility determination.