UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SALOME MCCRISTAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 09 C 7044** |
| | ) | |
| **v.** | ) | **Magistrate Judge Sidney I. Schenkier** |
| | ) | |
| **MICHAEL ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Salome McCristal, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the final decision of the Commissioner of Social Security ("Commissioner") denying her

application for Disability Insurance Benefits ("DIB"). On July 5, 2011, this Court reversed and

remanded the decision of the Administrative Law Judge ("ALJ"). *McCristal v. Astrue*, 09 C 7044,

2011 WL 2648591 (N.D. Ill. July 5, 2011). Ms. McCristal subsequently filed a motion seeking

payment of her attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28

U.S.C. § 2412 (doc. # 43). Plaintiff seeks a total award of $9,034.73, for work done in connection

with review of the final decision and for work done in seeking fees (*see* doc. # 43, Ex. C; doc. # 47;

Pl.'s Reply at 7). For the reasons set forth below, this Court grants Ms. McCristal's motion and

awards attorneys' fees and costs in the amount of $9,034.73.

### I.

Under EAJA, a party who prevails against the United States in a civil action is entitled to an

award of reasonable attorney's fees. 28 U.S.C. § 2412(d). A plaintiff is eligible for attorneys' fees

---

[1] On April 14, 2010, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the case was assigned to this Court for all proceedings, including entry of final judgment (doc. #20).

where (1) the plaintiff makes a timely application for fees; (2) the plaintiff is a "prevailing party"; (3) the government's position was not "substantially justified"; and (4) no special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1) (A)-(B); *see also Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). There is no dispute that plaintiff's application for fees is timely and that she is a prevailing party (*see* doc. # 46: Def.'s Response at 1). When a court reverses and remands an ALJ decision denying benefits, the claimant is the prevailing party. *See Shalala v. Schaefer*, 509 U.S. 292, 300-01 (1993). Nor are there any special circumstances that would make an award unjust.

Thus, the only dispute in this case is whether the Commisioner's position was "substantially justified." Ms. McCristal alleges that the government's position was not substantially justified, because the ALJ improperly discounted the opinion of Ms. McCristal's treating physician; relied on his own opinion to construct Ms. McCristal's residual functional capacity ("RFC") assessment; and conducted an erroneous Step 4 analysis. In contrast, the Commissioner argues that the government's position was substantially justified. For the reasons that follow, we conclude that Ms. McCristal has the better of the argument.

## A.

Under EAJA, a court may award fees if either the Commissioner's litigation position or pre-litigation conduct is not substantially justified. *Stewart*, 561 F.3d at 683; *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006). The Commissioner's pre-litigation conduct includes the ALJ's decisions. *Stewart*, 561 F.3d at 683. The test for determining whether the Commissioner's position was substantially justified is whether the agency had "a rational ground for thinking it had a rational ground for its action." *Burton v. Barnhard*, 43 F. App'x 991, 994 (7th Cir. 2002) (quoting *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994)). The Court must make a single determination for the

2

whole action, "treating a case as an inclusive whole, rather than as atomized line-items." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). The Court must make a global assessment of the Commissioner's conduct rather than "engage in 'argument counting.'" *Stewart*, 561 F.3d at 683; *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1081 (7th Cir. 2000). The Commissioner bears the burden of proving that the ALJ's opinion was substantially justified even though it was reversed and remanded. *Golembiewski*, 382 F.3d at 724.

The substantial justification standard is different from the "substantial evidence" standard used to evaluate an ALJ's decision on the merits of a disability claim. *Hallmark*, 200 F.3d at 1080. Accordingly, a finding that a case should be remanded because the Commissioner's position was not supported by substantial evidence is not conclusive evidence that fees should be awarded under EAJA. *Id.* at 1079-80. The Commissioner's position is substantially justified where the Commissioner can show that the ALJ's opinion had "reasonable factual and legal bases, and there . . . [is] a reasonable connection between the facts and her legal theory." *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006).

Nonetheless, an award of fees may be appropriate where the ALJ mischaracterized medical evidence or completely ignored substantial evidence. *Golembiewski*, 382 F.3d at 724-25. A reversal of the ALJ's decision due to legal error contrary to "clear and long judicial precedent" or statutory authority may provide evidence that the government's position is not substantially justified. *Golembiewski*, 382 F.3d at 724; *Pierce v. Underwood*, 487 U.S. 552, 569-71 (1988). Strong language against the Commissioner's position in an opinion on the merits may also provide evidence supporting an award of fees. *Golembiewski*, 382 F.3d at 724.

3

### B.

In this case, the ALJ determined that Ms. McCristal had the severe impairments of asthma and status post fracture of the right hip and leg, but that she nonetheless had the RFC to perform a full range of light work (R. 356). The ALJ further determined that Ms. McCristal could perform her past relevant work (*Id.*). In reversing and remanding the ALJ's decision, this Court explained that the ALJ erred in determining Ms. McCristal's RFC by improperly discounting the opinion of Ms. McCristal's treating physician, and by failing to cite to evidence in the record to support the RFC he constructed and adopted. *McCristal*, 2011 WL 2648591, at *10 -11. This Court then found that, because of the erroneous RFC assessment, the ALJ's Step 4 conclusion could not stand; and, further, that the ALJ's Step 4 analysis was independently erroneous because he failed to consider whether Ms. McCristal could perform the specific job functions of her past relevant work as actually performed, and failed to explain why he made a Step 4 finding inconsistent with the Vocational Expert's ("VE") testimony. *Id.* at *11.

The ALJ's determination of Ms. McCristal's RFC, and thus the Commissioner's pre-litigation position, was not substantially justified. *First*, the ALJ's RFC assessment was inconsistent with the opinion of Ms. McCristal's treating physician, Dr. Ivankovich. In determining the RFC, the ALJ "completely discounted the opinion of Dr. Ivankovich – Ms. McCristal's treating physician and the only medical expert to opine on how Ms. McCristal's disability affects her physical functionality after the October 31, 2006 assault." *McCristal*, 2011 WL 2648591, at *10. Under established legal precedent, an ALJ is required to give the treating physician's opinion controlling weight unless the opinion was not supported by medically acceptable techniques or was inconsistent with substantial evidence in the record. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). The ALJ did not

4

state how much weight, if any, he gave to Dr. Ivankovich's opinion; nor did he discuss the factors he was required by law to consider in weighing the opinion. An ALJ is required to give "good reason" for rejecting the treating physician's opinion, *id.*, and must consider "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

The ALJ was not substantially justified in rejecting Dr. Ivankovich's opinion because he did not follow the steps established legal precedent required him to take in doing so. While the ALJ did state that Ms. McCristal's testimony and activities of daily living ("ADLs") were not consistent with Dr. Ivankovich's opinion, the ALJ unduly relied on Ms. McCristal's ability to complete these basic ADLs. *McCristal*, 2011 WL 2648591, at *10. The Seventh Circuit has made clear that ALJs must not conflate a claimant's ability to perform ADLs at his or her own pace and the ability to perform a full-time job at the pace demanded by an employer. *Bjornson v. Astrue*, No. 11-2422, 2012 WL 280736, at *6 (7th Cir. Jan. 31, 2012) ("The failure to recognize" the "critical differences" between ADLs and activities of a full-time job "is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases"). A claimant's "ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011).

Thus, the fact that Ms. McCristal could perform some ADLs, such as the fact that she lived in a third floor apartment with no elevator, did not use a cane for short distances, and could do light cleaning, a claimant's ability to do domestic activities such as cook, clean, do laundry, and vacuum did not automatically establish that she was "capable of engaging in substantial physical activity."

*See Stewart*, 561 F.3d at 682-84 (finding that, while the ALJ mentioned the plaintiff's ability to cook, clean, do laundry, and vacuum at her home, those activities did not necessarily support the ALJ's RFC assessment that the plaintiff could perform simple, routine tasks, including lifting twenty pounds at a time and carrying objects weighing ten pounds). There was no substantial justification for the proposition that Ms. McCristal's ability to perform various ADLs empowered the ALJ to disregard Dr. Ivankovich's opinion.

The Commissioner attempts to offer additional arguments to show why the ALJ had rational reasons for rejecting Dr. Ivankovich's opinion: (1) that the opinion was set forth in a form seeking a reduced fare permit for Ms. McCristal, instead of a report more directed towards a Social Security claim, and did not include Dr. Ivankovich's separate statement explaining why Ms. McCristal met the reduced fare permit criteria (Def.'s Resp. at 4); and (2) that Dr. Ivankovich's office notes allegedly do not support Dr. Ivankovich's opinion set forth in the transit pass application (*Id.* at 5). However, the ALJ did not cite either of those considerations when he rejected Dr. Ivankovich's opinion, and the government thus may not assert them now. "[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ." *Golembiewski*, 382 F.3d at 725 (quoting *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003)).

*Second*, the ALJ constructed Ms. McCristal's RFC without citing to evidence in the record to support it. An ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). This Court found that the ALJ had "no discernable basis on which to quantify Ms. McCristal's RFC." *McCristal*, 2011 WL 2648591, at *10. The RFC included the ALJ's specific medical findings (*e.g.*, that Ms. McCristal could lift

6

twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours each without limitation) without any evidentiary support. *Id.* This Court found that "the record simply d[id] not support the parameters included in the ALJ's residual functional capacity determination." *McCristal*, 2011 WL 2648591, at *11 (quoting *Suide v. Astrue*, 317 F. App'x 684, 690 (7th Cir. 2010)).

The ALJ's opinion was not substantially justified because, not only did it fail to articulate the required "logical bridge" between evidence in the record and his conclusions regarding Ms. McCristal's RFC assessment, but it also did not have reasonable factual support in the record. Instead, the ALJ impermissibly used his "own lay opinions to fill evidentiary gaps in the record." *See Suide*, 371 Fed. App'x. at 690. While an ALJ must take into account both medical and non-medical evidence in determining whether a claimant is disabled, an ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings." *Bailey v. Barnhart*, 473 F. Supp. 2d 842, 849 (N.D. Ill. 2006) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

We note that in the original motion seeking fees under EAJA, plaintiff argued that this patent failing in the ALJ's decision demonstrated the lack of substantial justification for the government's position (Pl.'s Motion at 4). In its response, the government failed to offer any explanation to show why there was substantial justification for this position, and indeed, failed to address to point at all. The government's refusal to come to grips with this issue is, in the Court's view, further evidence of a lack of substantial justification.

*Third*, the Commissioner does assert that the ALJ was nonetheless substantially justified in finding that Ms. McCristal was not disabled because the ALJ could have determined that Ms. McCristal did not meet her burden of providing medical evidence of her disability (Def.'s Resp. at

6). However, Ms. McCristal did provide medical evidence of her disability, in the form of Dr. Ivankovich's opinion that Ms. McCristal would have significant difficulty walking more than one block, which he expected would last for four years (R. 253M). The ALJ was obligated to give this opinion controlling weight, unless he made certain specific required findings supported by sound reasons. *See Schaaf*, 602 F.3d at 875. In addition, as this Court noted, Ms. McCristal produced evidence in the form of her own testimony that she uses a cane for long distances but limps without it, she can stand comfortably for fifteen to thirty minutes at most, and she gets pins and needles in her leg if she sits for more than about fifteen minutes. *McCristal*, 2011 WL 2648591, at *9. Ms. McCristal also produced various medical reports indicating that she had reported pain in her right hip and leg and that she had degenerative arthritis in her right hip. *Id.* The Commissioner did not have a rational ground for believing he had a rational ground for defending the ALJ's opinion based on Ms. McCristal's failure to meet her burden of producing medical evidence, because the record does in fact contain medical evidence of Ms. McCristal's disability provided by Ms. McCristal.

If the ALJ found Ms. McCristal's evidence "insufficient, it was [his] responsibility to recognize the need for additional medical evaluations." *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011). Where the "record contains conflicting medical evidence, the ALJ has an affirmative responsibility to resolve that conflict." *Bailey*, 473 F. Supp. 2d at 849; *see also Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). While an ALJ's RFC assessment is not required to match that of a physician in the record, it is a well-established rule that where an ALJ "lacks sufficient evidence to make a decision, he must adequately develop the record and, if necessary, obtain expert opinions." *Clifford*, 227 F.3d at 873. If, due to the lack of a physician's opinion aside from that of Dr. Ivankovich stating that Ms. McCristal could not perform light work, the ALJ determined that he

8

lacked sufficient evidence to make a determination, he had a duty to develop the record further and to obtain additional expert opinions if necessary. Instead, the ALJ rejected Ms. McCristal's evidence and constructed his own RFC assessment. In so doing, the ALJ violated his affirmative duty to develop the medical record. The Commissioner did not have a rational ground for thinking it had a rational ground for defending the ALJ's opinion based on Ms. McCristal's alleged failure to meet her burden of production.

## C.

The Commissioner's pre-litigation conduct and litigation position regarding the ALJ's Step 4 determination were also not substantially justified. In the underlying decision to remand, this Court found that, although the ALJ found that Ms. McCristal could perform her past relevant work as a security guard "as actually and generally performed," he never discussed the specific job functions of Ms. McCristal's past security guard work. *McCristal*, 2011 WL 2648591, at *11 (quoting R. 358). An ALJ must consider whether the claimant could perform the duties of the specific job that she had held before determining whether the claimant could perform her past relevant work. *Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004). By failing to discuss the specific job functions of Ms. McCristal's past security job work, the ALJ contravened established legal precedent requiring him to do so. Thus, the ALJ's Step 4 determination was not substantially justified.

This Court found that the ALJ's determination that Ms. McCristal could perform her past relevant work was inconsistent with the RFC he adopted requiring Ms. McCristal to "avoid exposure to pulmonary irritants." *McCristal*, 2011 WL 2648591, at *11 (quoting R. 356). We noted that Vocational Expert ("VE") Julie Bose "stated that a hypothetical individual who must avoid

9

*concentrated exposure* to pulmonary irritants (and was limited to simple, repetitive tasks and incidental contact with others) could not perform Ms. McCristal's past relevant work." *Id.* (citing R. 512). The ALJ failed to articulate how Ms. McCristal could perform her past work with an RFC that required her to avoid not merely concentrated exposure, but any exposure, to pulmonary irritants. *Id.* Thus, we find that the ALJ did not have a rational ground for believing he had a rational ground for making a Step 4 determination that was inconsistent with not only VE Bose's testimony, but also his own RFC assessment.

Further, the Commissioner's defense of the ALJ's Step 4 determination characterizing it as a "typographical error" was not substantially justified. This Court found that the Commissioner's argument that the ALJ simply misspoke, and meant to say Ms. McCristal must avoid "concentrated exposure," was "a non-starter." *McCristal*, 2011 WL 2648591, at *11. Nor was this error "just a run-of-the-mill error in articulation," as the Commissioner now asserts (*see* Def.'s Resp. at 3). The difference between avoiding *concentrated* exposure to pulmonary irritants and avoiding *any* exposure to pulmonary irritants is significant. *See, e.g., Sayles v. Barnhart*, No. 00 C 7200, 2001 WL 1568850, at *9 (N.D. Ill. Dec. 7, 2001). An "absolute bar" on certain activities is a more extreme restriction than a bar which would prevent concentrated exposure. *See id.* The Commissioner did not have a reasonable basis in law to argue that the omission of the term "concentrated" was simply a minor typographical error.

The Commissioner asked this Court to "assume the ALJ did not mean what he wrote in his opinion," which this Court declined to do, because to accept the Commissioner's argument would have required this Court to go beyond the ALJ's written opinion. *McCristal*, 2011 WL 2648591, at *11. Thus, we find that the Commissioner did not have a rational ground for thinking he had a

rational ground to ask this Court to go beyond the ALJ's written opinion because "[w]e were neither present at the administrative hearing nor privy to the ALJ's thought processes in drafting his opinion." *Id.*

Finally, even if the ALJ's RFC had stated Ms. McCristal's limitations as avoiding concentrated exposure to pulmonary irritants, the ALJ's Step 4 determination would still not be substantially justified. VE Bose testified that a hypothetical individual who must avoid concentrated exposure to pulmonary irritants could not perform Ms. McCristal's past relevant work. Thus, the ALJ's Step 4 determination would still be inconsistent with the VE's testimony.

**D.**

"'[S]trong language against the government's position' in a merits opinion," such as "urging the Commissioner to assign the matter to a different ALJ . . . should establish lack of substantial justification in the ALJ's decision and in the Commissioner's defense of that position." *Golembiewski*, 382 F.3d at 725. Additionally, the fact that a court did not reject any issue raised by the plaintiff on appeal, or did not adopt or affirm any position taken by the Commissioner, may provide evidence of a lack of substantial justification. *Id.*

In reversing and remanding the ALJ's opinion, this Court did not reject any of Ms. McCristal's arguments on appeal. We accepted Ms. McCristal's arguments that the ALJ erroneously concluded that she could not perform her past relevant work, improperly determined her RFC, and improperly evaluated her treating physician's opinion. *McCristal*, 2011 WL 2648591, at *11.[2] By contrast, this Court did not adopt or affirm any position taken by the Commissioner. *Id.* We found

---

[2] Because we based our decision on those grounds, we did not reach Ms. McCristal's challenge to the ALJ's credibility determination. *Id.* at *12 n.5.

that the ALJ's RFC assessment, as well as the ALJ's Step 4 analysis, were erroneous. *Id.* We also rejected the Commissioner's position that the ALJ's RFC determination was supported by substantial evidence, and that the ALJ's erroneous Step 4 analysis was due to a typographical error. *Id.*

In addition, this Court used strong language pointing out the errors in the ALJ's opinion and in rejecting the Commissioner's defense of it. We noted that the ALJ had "no discernable basis" to support Ms. McCristal's RFC, and that the Commissioner's attempt to show that the ALJ's RFC determination was supported by substantial evidence "falls flat." *Id.* at *10. We further noted that the ALJ's RFC suffered from the "same flaw" as a Seventh Circuit case reversing and remanding an ALJ's opinion because the record "simply [d]id not support the parameters included in the ALJ's residual functional capacity determination." *Id.* at *11 (quoting *Suide*, 2010 WL 1508510, at *6). Given that this was the "second remand on Ms. McCristal's claims," we suggested "that the third hearing be conducted before a different ALJ, who may be better able to take a fresh look at the evidence." *Id.* at *12.

These factors, along with the others we have outlined above, lead us to conclude that the government has not met its burden of proving that its position was substantially justified. *Golembiewski*, 382 F.3d at 724. We hold that the Commissioner's position was not substantially justified, and we thus will award attorneys' fees and costs under EAJA.

## II.

We now consider whether the fees requested by Ms. McCristal are reasonable. As required by the EAJA, 28 U.S.C. § 2412(d)(1)(B), Ms. McCristal's counsel submitted an itemized statement of time expended on this case and hourly rates on which the total fee calculation was based. The Commissioner does not dispute the reasonableness of the time spent, the hourly rates claimed, or the

12

total calculation of fees. The Court finds the time spent to be reasonable, but nonetheless reviews the appropriateness of the plaintiff's methodology and accuracy of her calculations to determine the final award amount.

The plaintiff's initial EAJA petition requested an award in the amount of $8,509.73. Her supporting statement requests fees for 47.8 hours of attorney time at $175.00 per hour, 1.2 hours of legal assistant time at $85.00 per hour, and $30.73 in costs. Plaintiff's counsel submitted a supplemental request of $525.00 for 3.0 hours of attorney time at $175.00 per hour spent preparing the plaintiff's reply brief in this EAJA matter. Therefore, in sum, the plaintiff seeks a total award of $9,034.73.

The plaintiff calculated the hourly billing rate for attorney time based on changes in the Consumer Price Index ("CPI") between March 1996, when the EAJA was amended, and August 2010 when most of the work was performed. This period reflects a forty percent increase to the CPI. Applied to the statutory rate of $125 per hour, this increase to the CPI results in an adjusted rate of $175.00 per hour. *See* 28 U.S.C. § 2412(d)(2)(A)(ii) (2006). Attorney time was billed at $175.00 per hour, and legal assistant time was billed at $95.00 per hour. As mentioned above, the Commissioner does not challenge these rates or methodology. Upon review, the Court likewise finds no flaw in the approach or in the plaintiff's calculation of fees under it.

We therefore grant the plaintiff's request for fees and costs of $8,509.73 through the filing of the EAJA petition. Adding the supplemental request of $525.00, the total award comes to $9,034.73.

## CONCLUSION

For the reasons stated above, the Court grants the plaintiff's motion for attorneys' fees and costs (doc. # 43).  Pursuant to the EAJA, 28 U.S.C. § 2412, we award attorneys' fees and costs in the amount of $9,034.73, payable to Barry A. Schultz.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: March 1, 2012**